# United States Court of Appeals
## For the First Circuit

Nos. 07-2013
     07-2140

MARIBEL NEGRÓN-ALMEDA ET AL.,

Plaintiffs, Appellees,

v.

CARLOS GABRIEL SANTIAGO ET AL.,

Defendants, Appellants.

_____

PUERTO RICO TRADE AND EXPORT COMPANY,

Putative Intervenor, Appellant.

_____

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

_____

Before

Torruella, Circuit Judge,
Selya, Senior Circuit Judge,
and Howard, Circuit Judge.

_____

Susana I. Peñagarícano-Brown, Assistant Solicitor General, with whom Salvador J. Antonetti-Stutts, Solicitor General, Mariana D. Negrón-Vargas, Deputy Solicitor General, and Maite D. Oronoz-Rodríguez, Deputy Solicitor General, were on brief, for defendants.
     Eyck O. Lugo-Rivera, with whom Lauracelis Roques-Arroyo and Martínez Odell & Calabria were on brief, for putative intervenor.
     Claudio Aliff-Ortiz, with whom Michael Craig McCall, Eliezer Aldarondo-Ortiz, Sheila Torres-Delgado, and Aldarondo & López Bras were on brief, for plaintiffs.

June 5, 2008

**SELYA**, **Senior Circuit Judge**.  Following a jury verdict in an employment discrimination case premised on a claim of political connivance, the district court used its equitable powers to augment the verdict.  That action, along with the court's refusal to allow the affected public corporation to intervene in the post-verdict proceedings, have produced a series of conundra, with which we must now grapple.

After careful consideration of a meandering record, we reverse the court's grant of equitable relief in the nature of both reinstatement and backpay.  Recognizing, however, that there is still work to be done — on these particular facts, the issue of reinstatement is potentially subject to resurrection — we vacate its order denying intervention to the agency and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

We rehearse here only the bare facts needed to place these appeals into perspective.  In charting this course, we assume the reader's familiarity with our earlier opinion in Pequero-Moronta v. Santiago, 464 F.3d 29 (1st Cir. 2006), which involves this litigation and which provides useful background information.

This case, like many political discrimination cases, traces its genesis to the changing of the guard.  The precipitating event in this instance was Puerto Rico's 2000 general election, which resulted in the replacement of a New Progressive Party (NPP)

governor with one backed by the arch-rival Popular Democratic Party.

The newly-elected governor installed Carlos Santiago as Director of the Commercial Development Administration (CDA). Within weeks of his appointment, Santiago personally dismissed two of the plaintiffs, Maribel Negrón-Almeda (Negrón) and Aracelis Gascot-Cuadrado (Gascot). He also approved the decision by his subordinate, Susana Hernández, to dismiss the third plaintiff, Nilda Pérez-Montalvo (Pérez).

The trio brought suit in the United States District Court for the District of Puerto Rico.[1] Their complaint rested on the premise that they had been fired for reasons relating to their membership in the NPP, in violation of the First Amendment, the Fourteenth Amendment, and local law. The complaint described the plaintiffs' federal claims as being brought pursuant to 42 U.S.C. § 1983 and sought a gaggle of remedies, including compensatory damages, punitive damages, backpay, front pay, declaratory relief, and injunctive relief (i.e., reinstatement).

Santiago was the only defendant sued in his official capacity and the only defendant against whom the plaintiffs demanded injunctive relief. He was also sued in his individual

---

[1]Another cashiered employee, Miguelina Peguero-Moronta, originally joined as a plaintiff. Her claims were disposed of on summary judgment and need not concern us. We likewise have no occasion to discuss the derivative claims initially brought by the husbands of Negrón and Gascot.

capacity, as was Hernández and another CDA functionary, Vilma Jiménez.

On March 31, 2004, the district court entered a summary judgment order, which addressed the claims brought against Santiago in his official capacity. The order stated:

> As to plaintiffs' section 1983 cause of action against the named Defendants in their official capacity, "[i]t is well settled 'that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.'" Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 700 (1st Cir. 1995) (citing Johnson v. Rodríguez, 943 F.2d 104, 108 (1st Cir. 1991)). "This is so because § 1983 did not abrogate an unconsenting state's Eleventh Amendment immunity from being sued in damages in federal court." Vicenty-Martel v. Estado Libre Asociado de P.R., 48 F. Supp. 2d 81, 92 (D.P.R. 1999). The court need not go further. Accordingly, Plaintiffs' Section 1983 claims against the named Defendants in their official capacities must be DISMISSED.

At an ensuing trial, the district court twice granted motions for judgment as a matter of law. First, at the end of the plaintiffs' case in chief it granted Jiménez free passage with respect to all claims against her. See Fed. R. Civ. P. 50(a). Second, at the close of all the evidence it directed a verdict in favor of the remaining defendants (Santiago and Hernández in their individual capacities on the remaining claims). Id.

The plaintiffs appealed from the latter order. They could have, but did not, appeal the earlier summary judgment. We concluded that the evidence proffered against Santiago and

-5-

Hernández was sufficient to reach the jury and, therefore, reversed the order from which the appeal had been taken. See Pequero-Moronta, 464 F.3d at 53-54.

The parties retried the case. On March 27, 2007, the district court submitted it to a jury. In pertinent part, the court's instructions on damages informed the jurors, without objection from either side, that "[y]ou should consider the following elements of damages to the extent you find them proved by a preponderance of the evidence, and no others: 1) Net lost wages and benefits to the date of the trial . . . ." The jury found in favor of the plaintiffs, awarding them both compensatory and punitive damages.

A flurry of post-verdict motions ensued, beginning with the plaintiffs' motion for an assortment of equitable relief. That relief included reinstatement to their former positions and retroactive contributions to their retirement and Social Security accounts. The defendants objected on various grounds, noting among other things that the requested relief was unavailable because the Commonwealth was not a party to the action and no official-capacity defendant remained before the court. The defendants also argued that, in the circumstances at hand, reinstatement was inappropriate.

On April 30, 2007, the district court rejected the defendants' arguments and granted the requested relief. The court

-6-

specified that reinstatement should "include benefits in the government employees' retirement system and the Social Security Administration."  The court declared "that it was never its intention to bar Plaintiffs from seeking and obtaining equitable relief at the time of the [2004] dismissal of their monetary claims against Defendants in their official capacities."

Within ten days, the defendants moved for clarification. They later characterized this motion as a motion to alter or amend the judgment, see Fed. R. Civ. P. 59(e) — a characterization that we accept.  No matter how a party titles it, "a post-judgment motion made within ten days of the entry of judgment that questions the correctness of a judgment is properly construed as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e)." Global NAPs, Inc. v. Verizon New Engl., Inc., 489 F.3d 13, 25 (1st Cir. 2007) (citations and internal quotation marks omitted).

The defendants' motion raised Eleventh Amendment concerns and queried whether the benefits awarded were meant to be retroactive.  The plaintiffs served an opposition that denigrated the defendants' Eleventh Amendment concerns and supported retroactive application of the order for benefits.  The defendants filed a sur-reply, in which they cited this court's opinion in Figueroa-Rodríguez v. Aquino, 863 F.2d 1037 (1st Cir. 1988), for the proposition that backpay could not be awarded against an individual employee but only against an employer.

The district court overrode the defendants' objections and confirmed that it had intended to grant, and was granting, retroactive benefits against the defendants in their individual capacities. The court shrugged off the statement in Figueroa-Rodríguez to the effect that a backpay award "must be paid by or on behalf of the employer by definition," id. at 1043 n.7, saying that the court there already had determined that the defendants were entitled to qualified immunity and, thus, the quoted statement was dictum.

In a closely related disposition, made on the same day, the court denied a motion to intervene filed by the Puerto Rico Trade and Export Company (COMEX). That aspect of the court's ruling deserves further amplification.

COMEX, a public corporation, see P.R. Laws Ann. tit. 7, § 1227q, is arguably the successor-in-interest to the CDA (the extent to which that is so is a matter in dispute among the parties, and we do not purpose to resolve it here). COMEX filed its motion to intervene approximately one month after the district court's initial post-verdict grant of equitable relief. It suggested that the motion was timely in light of the fact that it had no notice of its exposure until the district court suddenly resurrected the previously dismissed claims against Santiago in his

official capacity.[2]  COMEX maintained that, given this unexpected turn of events, it deserved an opportunity to oppose reinstatement and other forms of equitable relief that it would have to effectuate.

In an accompanying Rule 59(e) motion, filed provisionally, COMEX contended that any grant of equitable relief had to be annulled because (i) neither it nor the CDA was a party to the action and (ii) the district court lacked authority to revisit its 2004 summary judgment that terminated the official-capacity claims against Santiago.  Alternatively, COMEX argued that it was not the same entity as the CDA (which no longer existed) and that no proper substitution of parties had been effected.  See Fed. R. Civ. P. 25(c), 25(d).

The district court branded COMEX's attempt to intervene untimely on the ground that, notwithstanding the wording of the court's earlier 2004 order, the official-capacity claims against Santiago for injunctive relief had never been dismissed. Therefore, the CDA's interest (and, thus, COMEX's interest) had been implicated throughout the litigation.  In so holding, the court stressed that, in its 2004 order, it had intended to

---

[2]Claims against a state official in his official capacity are treated as claims against the state.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  Similarly, claims against an official of the Commonwealth of Puerto Rico or of an agency thereof are treated as claims against the Commonwealth.  See, e.g., Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 7 (1st Cir. 2005).

terminate only the section 1983 official-capacity claims for damages. The court did not reach the arguments advanced in COMEX's provisional Rule 59(e) motion, but it did criticize COMEX's decision to wait a full month after the initial award of equitable relief before seeking to intervene.

These timely appeals followed. One, prosecuted by COMEX, challenges the denial of its motion to intervene. The other, prosecuted by the defendants, disputes their liability for the aforedescribed equitable relief. The jury's award of compensatory and punitive damages is conceded.

## II.  ANALYSIS

We begin with the question of intervention (COMEX's appeal) and then move to the question of backpay (the defendants' appeal).

### A.  Intervention.

The parties agree that COMEX's motion to intervene seeks intervention as of right and is, therefore, governed by Fed. R. Civ. P. 24(a). We thus constrain our review to a search for an abuse of discretion. Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998); Banco Popular v. Greenblatt, 964 F.2d 1227, 1230 n.3 (1st Cir. 1992). That same standard of review governs a district court's subsidiary findings regarding timeliness. See Greenblatt, 964 F.2d at 1230 n.3; Narragansett Indian Tribe v. Ribo, Inc., 868 F.2d 5, 7 (1st Cir. 1989).

-10-

Abuse of discretion is a relatively deferential standard of review.  Under it, we may not reverse a determination simply because we, if sitting as a court of first instance, would have weighed the relevant considerations differently.  Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 17 (1st Cir. 2000).  That does not mean, however, that the abuse-of-discretion standard is a rubber stamp, counseling affirmance of every discretionary decision made by a trial court.  To the contrary:

> A district court may abuse its discretion if it fails to consider a significant factor in the decisional calculus, if it relies on an improper factor in working that calculus, or if it considers all the appropriate factors but makes a serious error in judgment as to their relative weight. Within this framework, an error of law is always tantamount to an abuse of discretion.

Torres-Rivera v. O'Neill-Cancel, ___ F.3d ___, ___ (1st Cir. 2008) [2008 U.S. App. LEXIS 9312, at *6] (internal citation omitted).

Here, moreover, we are dealing with a claim for intervention as of right.  Where that modality is concerned, the district court's discretion is somewhat more circumscribed than in the context of intervention generally.  See Patch, 136 F.3d at 204; Int'l Paper Co. v. Inhabitants of Town of Jay, 887 F.2d 338, 344 (1st Cir. 1989) (citing Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 382 n.1 (1987) (Brennan, J., concurring)).

The case law applying Rule 24(a)(2) reflects a preference for multipartite tests as part of a district court's analysis.

-11-

See, e.g., Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989). One of these seems particularly pertinent here: a would-be intervenor as of right must satisfy a four-pronged test focusing on whether it has (i) made a timely motion, (ii) demonstrated a sufficient stake in the ongoing suit, (iii) showed that resolution of the suit in its absence somehow threatens to prejudice its interests, and (iv) negated the likelihood that some other party can be expected adequately to protect its interests. See B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 544-45 (1st Cir. 2006); Patch, 136 F.3d at 204. A failure to satisfy any one of these criteria is fatal to the motion. See B. Fernández & Hnos., 440 F.3d at 545; Patch, 136 F.3d at 204.

The only factor analyzed by the district court was the timeliness of the proposed intervention. Especially where, as here, the proposed intervention post-dates the entry of judgment, timeliness is a crucial element in the Rule 24(a)(2) calculus. See Greenblatt, 964 F.2d at 1230. Although judgments as to timeliness depend on the totality of the circumstances, a number of factors serve to structure and guide that analysis. These include "the length of time the applicant knew or reasonably should have known that its interest was imperilled before it moved to intervene," a quantification of "the foreseeable prejudice to existing parties if intervention is granted," and a similar quantification of "the foreseeable prejudice to the applicant if intervention is denied."

-12-

Id. at 1231; see Culbreath v. Dukakis, 630 F.2d 15, 20-24 (1st Cir. 1980).

These guideposts are standard fare — but in this case, there is a special twist.  Almost every aspect of the district court's timeliness analysis depends on the interpretation of its 2004 order granting summary judgment in favor of Santiago in his official capacity.  In denying intervention, the court relied upon the premise that the 2004 order did not terminate the plaintiffs' claims for reinstatement and other equitable relief; that COMEX ought to have known as much; and that, therefore, COMEX should have tried to intervene years before.  In order to evaluate the plausibility of this reasoning, we must as a first step distill the meaning of the 2004 order.  Only then can we decide whether the lower court's timeliness determination (and, thus, its denial of intervention) constitutes an abuse of discretion.

District court orders are documents of considerable import.  A district court speaks to the parties and the court of appeals primarily through its orders.  See In re Thinking Machs. Corp., 67 F.3d 1021, 1026 (1st Cir. 1995) (explaining that "[c]ourt orders are customarily important events in the life of a judicial proceeding; they are the primary means through which courts speak"); Advance Fin. Corp. v. Isla Rica Sales, Inc., 74 F.2d 21, 26 (1st Cir. 1984) (similar).  Thus, the phrasing of a court order is significant.  When that phraseology is imprecise, there may be

some play in the joints.  For example, a reviewing court can comb relevant parts of the record to discern the authoring court's intention.  See, e.g., Weyerhaeuser Co. v. Wyatt, 505 F.3d 1104, 1111 (10th Cir. 2007); Subsalve USA Corp. v. Watson Mfg., Inc., 462 F.3d 41, 45 (1st Cir. 2006); see also Martha's Vineyard Scuba Hq. v. Unidentified Vessel, 833 F.2d 1059, 1066-67 (1st Cir. 1987) (explaining that some deference is due to the writing judge in elucidating the meaning and intendment of an imprecise or ambiguous order).  But when a court's order is clear and unambiguous, neither a party nor a reviewing court can disregard its plain language "simply as a matter of guesswork or in an effort to suit interpretive convenience."  Alstom Caribe, Inc. v. Geo. P. Reintjes Co., 484 F.3d 106, 115 (1st Cir. 2007); see Lefkowitz v. Fair, 816 F.2d 17, 22 (1st Cir. 1987) (enforcing district court order that "contained not the slightest ambiguity" over a claim that the authoring judge "must" have meant something different).

The short of it is that, absent amendment or vacation, a court must carry out and enforce an order that is clear and unambiguous on its face, whether or not the inscribed language reflects the court's recollection of its actual intent.  See United States v. Spallone, 399 F.3d 415, 421 (2d Cir. 2005).  Put another way, unless and until a clear and unambiguous order is amended or vacated — and the court below eschewed that course — "a court must adopt, and give effect to, [the order's] plain meaning."  Id.

-14-

(internal quotation marks omitted); see In re Nat'l Gypsum Co., 219 F.3d 478, 484 (5th Cir. 2000).

In this instance, the plaintiffs suggest that we should interpret the district court's 2004 order as leaving intact their claims for injunctive relief against Santiago in his official capacity. They concede that the language of the order is inhospitable to this reading but cite three supposedly ameliorative facts. First, they note that the district court itself took this view of the order three years after entering it. Second, they observe that the case law cited in the lead-up to the 2004 order deals with the prohibition against bringing section 1983 claims for damages against state actors in their official capacities. Third, they assert that, at least once after 2004, the district court referred to Santiago as "the Director of the CDA."

In the circumstances of this case, this grab-bag of random facts lacks force. The 2004 order stated unambiguously and with conspicuous clarity that the plaintiffs' section 1983 claims against the defendants in their official capacities "must be dismissed" (excess capitalization omitted). This statement was made categorically and without any apparent limitation. The only section 1983 claims that had been pleaded against any party in his or her official capacity were the claims pleaded against Santiago for injunctive relief. Viewed against this backdrop, the wording of the order is clear on its face — and the plaintiffs' suggested

-15-

reading would render the affected portion of the order nugatory. We therefore decline the plaintiffs' invitation to sanction a Kafkaesque interpretation of the order that stands plain meaning on its head.

Accordingly, we conclude that when the district court terminated the plaintiffs' section 1983 official capacity claims, the claim for reinstatement fell out of the case. COMEX had no reason to believe that its interests, as opposed to the interests of the individual defendants, were implicated in the ongoing litigation.

The fact that the case law cited in the text of the order focused primarily on claims for damages does not get the plaintiffs very far. A party faced with a clear and unambiguous court order has no duty to look behind it. See 46 Am. Jur. 2d Judgments § 77 (2008) (explaining that a trial court's reasons "form no part of the judgment itself"). Moreover, to the extent that there was any room for doubt that the 2004 order meant exactly what it said, it was the burden of the doubters (here, the plaintiffs) to ask the district court in a timely fashion to clarify the scope of the order. See Wyatt, 505 F.3d at 1111. The plaintiffs failed to do so — and that failure estops them from now alleging the existence of a hidden ambiguity. See Glover v. Johnson, 934 F.2d 703, 708-09 (6th Cir. 1991).

Finally, the district court's reference to Santiago as

-16-

"the Director of the CDA" is unavailing.  Taken in context, that use of Santiago's title was in all probability intended as a gesture of respect rather than a description of his precise legal status in the suit.[3]

At oral argument before us, the plaintiffs advanced a new and different theory for upholding the district court's denial of intervention.  They posited that even if the 2004 order dismissed all the section 1983 official-capacity claims, their complaint nevertheless contained an implicit cause of action under Ex parte Young, 209 U.S. 123 (1908).  That cause of action, they maintain, suffices to support the award of reinstatement.

The doctrinal roots of Ex parte Young run deep.  For roughly a century, that decision has stood for the proposition that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law," in part because "a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State."  Green v. Mansour, 474 U.S. 64, 68 (1985).  But a legal doctrine cannot be viewed in a vacuum; more

_____

[3]This is not a case in which we are asked to infer from a silent record that a defendant has been sued in his official rather than his individual capacity.  See, e.g., Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Powell v. Alexander, 391 F.3d 1, 22-23 (1st Cir. 2004).  Here, we are asked to overturn an unambiguous decree on account of a court's casual reference to a defendant by his official title.  That would require an unprecedented leap of faith.

important than doctrine here is the commonsense principle that a litigant cannot freely reinvent his case as he goes along.

The plaintiffs' complaint made an explicit representation that their claims for injunctive relief were being brought under section 1983.[4] Given the sweep of that statute, recognizing a separate (implicit) cause of action under the aegis of Ex parte Young would serve simply to introduce a useless artifice into the act of pleading. Ex hypothesi, the Ex parte Young cause of action that the plaintiffs now say they impliedly pleaded would provide no different rights than were already available to them under section 1983. To recognize such a cause of action on these facts would, therefore, serve only to pervert the legitimate goals of notice pleading.

There is a second, equally impassable, obstacle that bars the plaintiffs' belated assertion of an Ex parte Young theory. The record reveals that this theory was not briefed on appeal. Consequently, it has been waived. See United States v. Houlihan, 92 F.3d 1271, 1292 (1st Cir. 1996) (noting settled appellate rule that issues not briefed and properly developed on appeal are waived); Martínez v. Colón, 54 F.3d 980, 987 (1st Cir. 1995) (same); United States v. Hadfield, 918 F.2d 987, 996 (1st Cir.

---

[4]Indeed, as late as their initial post-verdict motion requesting reinstatement, the plaintiffs specifically averred that "[t]he present action is predicated on 42 U.S.C. § 1983 for the violation of plaintiffs' constitutional right of freedom of speech and association."

-18-

1990) (same).

That ends this aspect of the matter. We conclude that the district court was bound by the plain meaning of the 2004 order.[5] The court misinterpreted the order; that interpretive bevue influenced its finding as to timeliness (including its comments as to prejudice, which were clearly tied to the court's conclusion that COMEX should have known of its stake in the litigation since at least 2004); and that tainted finding, in turn, led to the denial of intervention.

The plaintiffs have a fallback position. They note the district court's observation that the motion to intervene was filed one month after the court's initial grant of equitable relief. Under the peculiar circumstances of this case — including the district court's incorrect reading of its 2004 order — that period of delay is so slight as not to render that intervention motion untimely. See, e.g., United Airlines, Inc. v. McDonald, 432 U.S. 385, 396 (1977) (reversing denial of post-judgment intervention sought within the 30-day time limit for appealing the judgment); Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008) (finding Rule 24(a)(2) motion timely when intervenor waited roughly one month after receiving notice that her interest had suddenly

---

[5]Questions concerning whether the district court could or should have vacated or amended that order, so long as it gave the parties notice and an opportunity to be heard, are beyond the purview of this opinion.

-19-

fallen into jeopardy); see also Dimond v. D.C., 792 F.2d 179, 193 (D.C. Cir. 1986).

This disposes of the question of intervention. For the reasons discussed above, the order refusing intervention must be vacated.

## B. **Equitable Relief (Backpay)**.

We turn next to the district court's denial of the defendants' motion to alter or amend the judgment. A trial court's disposition of a Rule 59(e) motion engenders review for abuse of discretion. See Río Mar Assocs., LP v. UHS of P.R., Inc., 522 F.3d 159, 163 (1st Cir. 2008); Aybar v. Crispin-Reyes, 118 F.3d 10, 15 (1st Cir. 1997). Within that rubric however, abstract questions of law receive de novo review. Pérez v. Volvo Car Corp., 247 F.3d 303, 319 (1st Cir. 2001). That is important because a court's material error of law is invariably an abuse of its discretion. See Río Mar, 522 F.3d at 163; Rosario-Urdaz v. Rivera-Hernández, 350 F.3d 219, 221 (1st Cir. 2003).

In the matter at hand, the defendants postulate that the district court committed two errors of law, both of which relate to the award of retroactive contributions toward the plaintiffs' retirement and Social Security accounts. This award was faulty, the defendants say, because such redress (i) cannot be granted against supervisors who are sued only in their individual capacities and (ii) amounted to a double recovery. This latter

-20-

point derives from the district court's instruction to the jury to include lost benefits in its calculation of compensatory damages.

The plaintiffs' initial rejoinder is that neither of these arguments has been preserved for appellate review. As to the first argument, the plaintiffs are plainly incorrect. The rule is that if an argument is raised belatedly in the district court but that court, without reservation, elects to decide it on the merits, the argument is deemed preserved for later appellate review. See, e.g., Me. Green Party v. Me. Sec'y of State, 173 F.3d 1, 4 (1st Cir. 1999); United States v. Lombard, 72 F.3d 170, 174 n.2 (1st Cir. 1995). So it is here: although the defendants did not raise this "status" argument until they filed their sur-reply, the district court opted to address the argument head-on. No more is exigible to preserve the point for appellate review. Thus, we proceed to the merits.

It is settled law in the federal courts that backpay as such cannot be awarded against a defendant in his or her individual capacity. See, e.g., L.A. Police Protective League v. Gates, 995 F.2d 1469, 1472 n.1 (9th Cir. 1993); Lenea v. Lane, 882 F.2d 1171, 1178 (7th Cir. 1989); Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985). By definition, backpay is an award against an employer and, thus, any demand for backpay from an individual-capacity defendant is a non-sequitur. See Fred v. Aponte-Roque, 916 F.2d 37, 38 n.2 (1st Cir. 1990); Figueroa-Rodríguez, 863 F.2d at 1043 n.7. This

makes perfect sense; a suit for backpay, even one brought under a tort-like cause of action such as that supplied by section 1983, necessarily stems from the contract of hire — a contract to which the individual-capacity defendant was never a party. See Omosegbon v. Wells, 335 F.3d 668, 673 (7th Cir. 2003); cf. L.A. Police, 995 F.2d at 1473 n.1 (observing that allowing awards of backpay against individual-capacity supervisors would thwart "the policies underlying the qualified immunity doctrine").

As the plaintiffs point out, our previous decisions on this point discuss retroactive awards of wages and benefits, but do not specifically address retirement or Social Security contributions. See, e.g., Figueroa-Rodríguez, 863 F.2d at 1043. But the logic that prohibits the imposition of the former against an individual-capacity defendant applies with equal force to the imposition of the latter. The concept of backpay is not monolithic but, rather, encompasses a panoply of items. Cf. Rasimas v. Mich. Dep't of Mental Health, 714 F.2d 614, 626 (6th Cir. 1983) (observing in Title VII case that backpay includes "[s]ick leave, vacation pay, pension benefits and other fringe benefits the claimant would have received but for discrimination"). One common denominator, however, is that all species of backpay are improper forms of relief when imposed upon a defendant who is sued only in his or her individual capacity.

Lest the cynical among us suggest that cold logic has

-22-

robbed the plaintiffs of their just desserts, we hasten to add that this rule is in no way inequitable.  While backpay as such cannot be imposed upon an individual-capacity defendant, a successful plaintiff is nonetheless entitled to receive compensatory damages against such a defendant.  See Santiago-Negrón v. Castro-Dávila, 865 F.2d 431, 441 (1st Cir. 1989) (holding that lost wages are a form of legal redress to be awarded by the jury, not equitable relief to be awarded by the judge, in a section 1983 action for a politically discriminatory firing).  Properly proven, those damages will equal the grand total of the plaintiff's aggregate lost wages and benefits.  See Rosario-Urdaz, 350 F.3d at 222.  Indeed, the district court's jury instructions in this very case, quoted earlier, were commodious enough to cover the full array of benefits.

To say more on this issue would be to paint the lily.  We conclude, without serious question, that the district court erred in imposing liability for retroactive retirement and Social Security contributions upon the defendants in their individual capacities.  Accordingly, we reverse that portion of the district court's judgment.[6]

---

[6]This result renders it unnecessary to reach either the defendants' alternate argument as to the effect of the jury instructions or the plaintiffs' rejoinder that this alternate argument was forfeited.

## III. CONCLUSION

We are far from enthusiastic about remanding this case for yet another round of proceedings after two trials, two appeals, and more than six years of litigation. But we do what we must. We reverse those portions of the district court's judgment awarding retroactive retirement and Social Security contributions against the individual-capacity defendants. Given the unambiguous text of the 2004 order, we also reverse the judgment insofar as it purports to award reinstatement or other injunctive relief against Santiago in his official capacity. Concomitantly, we vacate the denial of COMEX's Rule 24(a)(2) motion to intervene.

We recognize (and leave open) the possibility that the plaintiffs, on remand, may seek to vacate or amend the pertinent provision of the 2004 order so as to revive the issue of reinstatement. Should such a motion be made, cf. United States v. An Article of Drug, 661 F.2d 742, 746 (9th Cir. 1981) (allowing post-verdict amendment of complaint to include injunctive relief), the district court shall first reconsider COMEX's motion for intervention. Thereafter, it shall afford the intervenor (should intervention be granted) and the defendants an opportunity to be heard on the motion to vacate and/or amend.

In that regard, the court shall consider, among other things, that in their earlier appeal to this court the plaintiffs could have, but did not, mount a challenge to the 2004 order.

-24-

Thus, the court will have to determine whether that foregone opportunity precludes it from revisiting the 2004 order.  See, e.g., United States v. Connell, 6 F.3d 27, 30 (1st Cir. 1993) (explaining that "issues that remain open on remand frequently will be circumscribed by the earlier appeal").

If the court allows COMEX to intervene and also amends or vacates the critical provision of the 2004 order, it must then pass upon any arguments vis-à-vis the propriety of reinstatement raised either by COMEX or by the defendants.

We take no view as to whether COMEX should be permitted to intervene, whether the 2004 order should be revisited, whether vacation or amendment of that order should be allowed, or whether reinstatement is appropriate.[7]  Such matters are, in the first instance, for the district court.

We need go no further.  In line with the foregoing, we remand the case to the district court for further proceedings consistent with this opinion.


**Reversed in part, vacated in part, and remanded.  Costs are to be taxed in favor of the appellants.**

---

[7]Reinstatement is not an automatic entitlement in an employment discrimination case.  See Selgas v. Am. Airlines, Inc., 104 F.3d 9, 15 (1st Cir. 1997); Rosario-Torres v. Hernández-Colón, 889 F.2d 314, 321-23 (1st Cir. 1989) (en banc).