# United States Court of Appeals
## For the First Circuit

No. 19-2121

T-MOBILE NORTHEAST LLC,

Plaintiff, Appellee,

v.

TOWN OF BARNSTABLE, ET AL.,

Defendants, Appellees.

NANCY SNELL; LORRAINE O'CONNOR,

Putative Intervenors, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Paul Revere, III on brief for appellants.
Thomas Scott Thompson, Courtney DeThomas, Patrick J. Curran Jr., and Davis Wright Tremaine LLP on brief for appellee T-Mobile.

August 7, 2020

**SELYA**, **Circuit Judge**.  Plaintiff-appellee T-Mobile Northeast LLC (T-Mobile) wants to operate a wireless telecommunications facility in an existing church steeple in a bucolic Cape Cod community.  It sought the required municipal permissions and, when it was unsuccessful in obtaining them, it sued the Town of Barnstable (the Town), two of its agencies, and a coterie of municipal officials in the United States District Court for the District of Massachusetts pursuant to the Telecommunications Act of 1996 (TCA).  See 47 U.S.C. § 332(c)(7).  Two local residents (appellants Nancy Snell and Lorraine O'Connor) sought leave to intervene.  T-Mobile opposed their motions, and the district court denied them.  This appeal followed.  Discerning neither legal error nor abuse of discretion, we affirm.

## I. BACKGROUND

We briefly rehearse the relevant facts and travel of the case, drawing upon facts proffered by the appellants in support of their nearly identical motions to intervene and supplementing those proffers with undisputed facts contained elsewhere in the record.  See B. Fernández & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543 (1st Cir. 2006).  Our starting point is in 2017, when T-Mobile obtained a building permit to install an antenna array concealed within the steeple of South Congregational Church in the Centerville section of the Town.

The appellants — who own properties abutting the Church and represent a civic group called Centerville Concerned Citizens (CCC) — entered the fray in April of 2018. At that time, CCC petitioned the Town's Building Commissioner to revoke T-Mobile's permit on the ground that the Centerville Village District had been designated a District of Critical Planning Concern (DCPC) and was therefore subject to zoning restrictions prohibiting the installation of wireless telecommunications facilities. In July of 2018, the Commissioner denied CCC's request as untimely but nonetheless issued a stay of the permit.

T-Mobile spent the next nine months seeking relief from the Town's Planning Board and Zoning Board of Appeals. At every turn, CCC and the appellants appeared in opposition and participated in hearings. At the end of the line, though, the Zoning Board of Appeals denied T-Mobile's requests for a variance and a special use permit, largely adopting CCC's argument that the board lacked jurisdiction to grant relief under the operative DCPC regulations. Similarly, the Planning Board denied T-Mobile's application for a regulatory agreement to install the antenna array in the church steeple and ancillary equipment in the church basement.

Having exhausted all available avenues for local relief, T-Mobile repaired to the federal district court. Its complaint asserted TCA claims against the Town, the Planning Board, the

Zoning Board of Appeals, and the members of each board in their representative capacities.[1] Enacted by Congress to accelerate the development of personal wireless networks nationwide, the TCA limits local land-use regulatory authority over the placement and construction of such networks and creates a federal cause of action for parties adversely affected by local regulations that transgress those limitations. See 47 U.S.C. § 332(c)(7); Omnipoint Holdings, Inc. v. City of Cranston, 586 F.3d 38, 45-47 (1st Cir. 2009); Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 19-20 (1st Cir. 2002).

T-Mobile challenged the Town's denial of regulatory relief as unsupported by substantial evidence, an unlawful prohibition on the provision of wireless services, and an exercise in regulatory excess. See 47 U.S.C. § 332(c)(7)(B). The Town disputed these challenges and interposed a salmagundi of affirmative defenses.

More than two months after the commencement of suit, the appellants moved to intervene as of right, see Fed. R. Civ. P. 24(a), or in the alternative, to intervene permissively, see Fed. R. Civ. P. 24(b). They anchored their motions on claims that they

---

[1] We recognize that simplicity has its virtues. Because the individual defendants are sued in their representative capacities and because the two boards are municipal appendages, we proceed as if the Town was the sole defendant. Our decision, of course, encompasses all of the named parties.

- 4 -

were abutting landowners who had a stake in both enforcing the DCPC zoning regulations and in upholding the decisions of the Town's land-use boards. T-Mobile opposed the motions. Ruling on the papers, the district court summarily refused the requests for intervention. This timely appeal ensued.

While this appeal was pending, the district court granted summary judgment in T-Mobile's favor on the merits of its TCA claims. See T-Mobile Ne. LLC v. Town of Barnstable, No. 19-CV-10982, 2020 WL 3270878, at *9 (D. Mass. June 17, 2020). The court concluded that the Town's denial of regulatory relief was not supported by substantial evidence and served, in effect, as an unlawful prohibition on the provision of wireless services. See id. at *5-8. T-Mobile advised us of this decision, see Fed. R. App. P. 28(j), suggesting that the ruling bolstered its argument that the proposed intervention was untimely. The appellants did not reply to T-Mobile's Rule 28(j) letter.

## II. ANALYSIS

The Civil Rules establish two modes of intervention: intervention as of right, see Fed. R. Civ. P. 24(a), and permissive intervention, see Fed. R. Civ. P. 24(b). The appellants claim an entitlement to both modes. We first discuss the standard of review and then discuss each of the appellants' claims.

## A. **Standard of Review.**

We review a district court's denial of a motion for intervention as of right through an abuse-of-discretion lens. See Negrón-Almeda v. Santiago, 528 F.3d 15, 21 (1st Cir. 2008). We use the same abuse-of-discretion lens when reviewing the denial of a motion for permissive intervention. See Int'l Paper Co. v. Inhabitants of Town of Jay, 887 F.2d 338, 343 (1st Cir. 1989). We remain mindful, of course, that the abuse-of-discretion standard is not a monolith: within it, abstract legal rulings are scrutinized de novo, factual findings are assayed for clear error, and the degree of deference afforded to issues of law application waxes or wanes depending on the particular circumstances. See Candelario-Del-Moral v. UBS Fin. Servs. Inc. of P.R. (In re Efron), 746 F.3d 30, 35 (1st Cir. 2014); Cotter v. Mass. Ass'n of Minority Law Enf't Officers, 219 F.3d 31, 34 (1st Cir. 2000).

We add, though, that in the Rule 24(a) context, abuse-of-discretion review has a special gloss. A district court's discretion to deny a motion to intervene as of right is circumscribed by Rule 24(a)'s explicit directive that the court "must" allow intervention as of right by parties who satisfy the enumerated requirements. See Cotter, 219 F.3d at 34.

Because of its relationship to the standard of review, we pause to draw out a common thread that runs through all of the appellants' arguments. They assail the cryptic nature of the

district court's summary denial of their motions to intervene. In their view, the court's failure to explicate its reasoning amounts to a per se abuse of discretion, requiring vacation of its order. This argument is unavailing.

The appellants offer no precedential support for their ipse dixit that brevity in denying a motion for intervention, without more, constitutes a per se abuse of discretion. What is more, the case law is inhospitable to this notion. See, e.g., Ungar v. Arafat, 634 F.3d 46, 51 (1st Cir. 2011) (rejecting claim that district court abused discretion by conclusorily denying intervention as of right because appellate court could review record and "gauge whether the court applied the . . . factors appropriately"). Where, as here, the district court does not state its reasons for denying intervention, abuse-of-discretion review simply becomes less deferential because "there is nothing to which to give deference." Cotter, 219 F.3d at 34. In other words, "[w]here . . . the district court made no specific findings, we can do so, relying on the record." Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 64 (1st Cir. 2008); cf. R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 12 (1st Cir. 2009) (stating that "when a trial court's order is imprecise, the court of appeals frequently 'can comb relevant parts of the record to discern the authoring court's intention'" (quoting Negrón-Almeda, 528 F.3d at 23)).

The upshot is that where, as here, the district court summarily denies a motion to intervene, the court of appeals must review the record as a whole to ascertain whether, on the facts at hand, the denial was within the compass of the district court's discretion. See Ungar, 634 F.3d at 51 & n.4; cf. Geiger, 521 F.3d at 64-65 (holding that district court did not abuse discretion by summarily granting intervention where "record amply demonstrate[d] that [intervenor] satisfied the requirements of Rule 24(a)"). It is against this backdrop that we turn to the denial of the appellants' motions.

## B. **Intervention as of Right.**

To prevail on a motion for intervention as of right, a putative intervenor must demonstrate (1) the timeliness of her motion; (2) a concrete interest in the pending action; (3) "a realistic threat" that resolution of the pending action will hinder her ability to effectuate that interest; and (4) the absence of adequate representation by any existing party. R & G Mortg., 584 F.3d at 7. It is black letter law that a failure to satisfy any one of these four requirements sounds the death knell for a motion to intervene as of right. See Ungar, 634 F.3d at 50-51; Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998). In this instance, the most obvious shortcoming in the appellants' asseverational array relates to the fourth requirement: adequacy of representation. We start — and end — with that requirement.

To demonstrate inadequate representation, a putative intervenor must show that no existing party fairly represents her interests.  See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 807 F.3d 472, 475 (1st Cir. 2015). Although this requirement typically demands only a showing that an existing party's representation may prove inadequate, see Conservation Law Found., Inc. v. Mosbacher, 966 F.2d 39, 44 (1st Cir. 1992), such a showing necessitates more than empty conjecture, see Patch, 136 F.3d at 207 (cautioning that this requirement "is more than a paper tiger").  As we have said, a party pursuing intervention as of right "must produce some tangible basis to support a claim of purported inadequacy" of representation.  Id.

This requirement has additional bite when a would-be intervenor's objective aligns seamlessly with that of an existing party.  In such a situation, a rebuttable presumption of adequate representation attaches.  See Students for Fair Admissions, 807 F.3d at 475; B. Fernández, 440 F.3d at 546.  So, too, when a would-be intervenor seeks to appear alongside a governmental body in defense of the validity of some official action, a rebuttable presumption arises that the government adequately represents the interests of the would-be intervenor.  See Maine v. Dir., U.S. Fish & Wildlife Serv., 262 F.3d 13, 19 (1st Cir. 2001); Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 111 (1st Cir. 1999); Patch, 136 F.3d at 207.

- 9 -

These presumptions hold sway here. With respect to T-Mobile's TCA claims, the Town and the appellants share the same ultimate goal: each of them is seeking to vindicate local land-use regulations and uphold the Town's administrative determinations. In addition, the presumption that a governmental entity defending official acts adequately represents the interests of its citizens applies full-bore, given the Town's vigorous, no-holds-barred defense of its refusal to grant a variance or other regulatory relief to T-Mobile. See, e.g., Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560, 567 (1st Cir. 1999) (applying this presumption when there was "no doubt that [government defendant] was zealously interested in upholding the validity of the [challenged] statute").

To defeat these presumptions, the appellants would have had to put forward "a strong affirmative showing" that the Town does not adequately represent their interests. Patch, 136 F.3d at 207 (quoting United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 985 (2d Cir. 1984)); see B. Fernández, 440 F.3d at 546 (explaining that putative intervenor must "offer 'an adequate explanation as to why'" existing party's representation is insufficient (quoting Maine, 262 F.3d at 19)). Such a showing would have had to consist of "'something more than speculation as to the purported inadequacy' of representation." Students for Fair Admissions, 807 F.3d at 475 (quoting Moosehead Sanitary Dist.

- 10 -

v. <u>S. G. Phillips Corp.</u>, 610 F.2d 49, 54 (1st Cir. 1979)).  Here, however, the appellants made no such showing in the district court. Instead, they offered only conclusory arguments, founded entirely on speculation and surmise.

To illustrate, the appellants — in struggling to portray the Town's representation as deficient — worry that the Town "ultimately may settle this matter" and suggest that the Town "appears to be adopting a litigation strategy that seems inadequate."  But there is no meat on these bones; the appellants' conjectures are tendered without either specificity or record support.  For aught that appears, the Town has conducted a robust defense, and the appellants have not identified even a single shortcoming in its handling of the litigation.  A showing of inadequate representation cannot rest on so flimsy a foundation.[2]

To cinch the matter, a court ordinarily may deem an existing party's representation adequate if that party is likely to raise the putative intervenor's preferred arguments and it seems improbable that the putative intervenor will add any missing element.  See <u>United Nuclear Corp.</u> v. <u>Cannon</u>, 696 F.2d 141, 144

_____

[2] For the first time on appeal, the appellants attempt to raise the specter of a poorly conceived legal strategy on the Town's part.  Few principles are as entrenched in this circuit as that, "absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."  <u>Teamsters Union, Local No. 59</u> v. <u>Superline Transp. Co.</u>, 953 F.2d 17, 21 (1st Cir. 1992).

(1st Cir. 1982).  Given the circumstances of this case, the district court was entitled to invoke this rule of thumb.  After all, the appellants' neither identified any arguments that the Town was unlikely to advance nor articulated any convincing reason that might have led the district court to believe that they would inject some missing ingredient into the Town's defense.

That ends this aspect of the matter.  Because the appellants failed to make a cognizable showing of inadequacy of representation, we affirm the district court's denial of their motions to intervene as of right.

### C.  **Permissive Intervention.**

We need not linger long over the district court's denial of the appellants' motions for permissive intervention.  Under Rule 24(b), a district court may, in its discretion, allow the intervention of any party who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Although the appellants cross this threshold, that does not get them very far:  they must offer some persuasive reason as to why the district court abused its discretion in denying intervention.

When deciding whether or not to allow permissive intervention on behalf of persons who share common issues of law and/or fact with an existing party, a district court "must consider whether the intervention will unduly delay or prejudice the

adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Additionally, the court may "consider almost any factor rationally relevant" to the intervention determination. Daggett, 172 F.3d at 113. The court "enjoys very broad discretion in granting or denying [such a] motion." Id.

In the court below, the putative intervenors argued that their status as abutting landowners gave them defenses that shared common questions of law and/or fact with the defenses asserted by the Town; that this status rendered them aggrieved persons under Massachusetts law, see Mass. Gen. Laws ch. 40A, § 17 (establishing right of appeal by "[a]ny person aggrieved by a decision of the [zoning] board of appeals"), impliedly repealed on other grounds by Mass. Gen. Laws ch. 185, § 3A; and that, therefore, they should be permitted to intervene. This argument turns state law upside-down: even if we assume that "aggrieved person" status under state law factors into the permissive intervention calculus, the putative intervenors' insistence that they have such status is misplaced. Far from being aggrieved by the Town's denial of regulatory relief, the appellants seek to uphold that denial. They are, therefore, not aggrieved persons within the contemplation of the Massachusetts statute. See Prudential Ins. Co. of Am. v. Bd. of Appeals of Westwood, 469 N.E.2d 501, 503 (Mass. App. Ct. 1984) (explaining that abutters who opposed site plan did not qualify as

- 13 -

persons aggrieved by zoning board's rejection of plan because "they were presumably benefited by it").

To the extent that the appellants' motions for permissive intervention can be construed to cut a wider swath, the record amply supports their denial. To begin, a district court considering requests for permissive intervention should ordinarily give weight to whether the original parties to the action adequately represent the interests of the putative intervenors. See Kowal v. Malkemus (In re Thompson), 965 F.2d 1136, 1142 n.10 (1st Cir. 1992). As we already have explained, see supra Part II(B), the appellants made no showing that the Town would fail to represent their interests adequately.

Relatedly, a district court mulling permissive intervention is free to consider whether "the applicants may be helpful in fully developing the case." Daggett, 172 F.3d at 113. Here, the appellants' motion papers did not articulate what, if anything, they would contribute to the vitality of the Town's defense. Faced with this silent record, the district court was not obliged to conjure up unpleaded allegations. Cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that "[j]udges are not expected to be mindreaders," with the result that litigants are expected "'to spell out [their] arguments squarely and distinctly,' or else forever hold [their] peace"

- 14 -

(quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988))).

If more were needed — and we do not think that it is — Rule 24(b)(3) directs courts to consider whether permissive intervention "will unduly delay or prejudice the adjudication of the original parties' rights." This directive is especially important in TCA cases because a core purpose of the TCA is to minimize delay in resolving disputes about the construction of wireless telecommunications facilities. See 47 U.S.C. § 332(c)(7)(B)(v) (requiring courts to "hear and decide [TCA actions] on an expedited basis"); Omnipoint Holdings, 586 F.3d at 47 (explaining that TCA "stresses the need for speedily deploying telecommunications and seeks to get prompt resolution of disputes"). Multiplying the number of parties in a case will often lead to delay. Cf. Daggett, 172 F.3d at 113 (noting that district court's "thought that the addition of still more parties would complicate a case" was "plainly a permissible consideration"). With this in mind, we think it evident that permitting intervention in TCA actions by parties who — like the appellants — do not appear poised to add anything of meaningful value to the litigation would unduly hinder the efficient resolution of TCA cases. See id. (finding it within district court's discretion to consider that case "badly need[s] to be expedited" and that "more parties would complicate" matters unnecessarily).

The short of it is that a district court's discretion to grant or deny motions for permissive intervention is very broad. See Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 641 (1st Cir. 1989); Int'l Paper, 887 F.2d at 343. We will set aside such a decision only upon a showing of a clear abuse of that broad discretion. See Travelers Indem., 884 F.2d at 641. On this record, there is no principled way for us to say that the district court abused its discretion in denying the appellants' motions for permissive intervention.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the order denying intervention is

**Affirmed.**