# United States Court of Appeals
## For the First Circuit

No. 19-1533

WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a Christiana Trust,
not individually but as Trustee for BCAT 2015-14BTT,

Plaintiff, Appellee,

v.

NINA B. COLLART, individually and as Trustee of the Lucien R.
Collart, Jr. Nominee Trust and as Trustee of the Anne B. Collart
Nominee Trust; THOMAS D. MANN, JR. as Trustee of the Nina
Collart Nominee Trust,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch and Lipez,
Circuit Judges.[*]

Thomas O. Moriarty, with whom David M. Rogers, Amy M.
McCallen, and Moriarty Troyer & Malloy LLC were on brief, for
appellants.
Marissa I. Delinks, with whom Hinshaw & Culbertson LLP was on
brief, for appellee.

---

[*]     Judge Torruella heard oral argument in this matter and
participated in the semble, but he did not participate in the
issuance of the panel's decision.  The remaining two panelists
therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

November 13, 2020

**LYNCH**, **Circuit Judge**. Wilmington Savings Fund Society, FSB brought suit in 2017 against Nina Collart and Thomas Mann, Jr. concerning a home equity line of credit ("HELOC") that had been granted in 2007 to Nina's father, Lucien, on property in Harwichport, Massachusetts. Wilmington sued Nina in her individual capacity and as the trustee of both the Lucien R. Collart, Jr. Nominee Trust (the "Lucien Trust") and the Anne B. Collart Nominee Trust (the "Anne Trust"). Mann is named in his capacity as the trustee of the Nina B. Collart Trust (the "Nina Trust").

Wilmington sought a declaratory judgment that the HELOC was valid. It also sought an equitable lien on the property, sought a constructive trust, and claimed that Nina fraudulently transferred the property to herself. Both Wilmington and the defendants filed motions for summary judgment.

The district court issued a declaratory judgment declaring the HELOC invalid. It granted Wilmington an equitable lien in the property and dismissed Wilmington's other two claims. The defendants appealed from the grant of an equitable lien.

We hold that the district court abused its discretion in granting Wilmington an equitable lien. We reverse and direct entry of judgment for the defendants.

## I. Facts

In 1999, Anne Collart, together with her husband Lucien and their daughter Nina, acquired a property in Harwichport, Massachusetts (the "Harwichport Property"). Two months later, the Collarts established three almost-identical trusts: the Anne Trust, the Lucien Trust, and the Nina Trust. Each Collart was the sole beneficiary of the trust bearing his or her name. Together they deeded a one-third interest in the Harwichport Property into each trust so that the trusts owned the Harwichport Property as tenants in common. The declarations of trust, and the deed conveying the Harwichport Property to the trusts, were recorded in 1999.

Anne was the trustee for the Lucien and Nina trusts. Lucien was the trustee for the Anne Trust. Anne died in 2002. Lucien and Nina, as sole beneficiaries of their respective trusts, could appoint successor trustees to replace Anne. Nina appointed a successor trustee for her trust. Lucien did not.

Anne had named Lucien the executor of her will. She gave Lucien all of her personal property and divided the remainder of her assets between two trusts: the Tax Shelter Trust Fund and the Marital Trust Fund (collectively, the "Estate Trusts"). She appointed Lucien trustee of both trusts.

Both Lucien and Nina were beneficiaries of the Estate Trusts. Lucien was entitled to the net income from the Estate

Trusts during his lifetime. Anne reserved the principal for Nina. It would pass to her upon Lucien's death. As trustee of the Estate Trusts, Lucien ignored the trusts' terms and never transferred any property into them. Instead, he liquidated Anne's assets and kept the money for himself.

Four years after Anne's death, Lucien met and had a relationship with Brenda Tri. Lucien began dividing his time between the Harwichport Property, where he lived, and Tri's nearby horse farm. He took Tri on cruises at his expense, purchased horses for her farm, and paid off her credit card bills.

A few months after meeting Tri, in April 2007, Lucien purchased a property in South Dennis, Massachusetts (the "Bass River Property") for $2.3 million. To purchase the Bass River Property, Lucien used a combination of his own assets, assets from Anne's estate, and a $500,000 home equity line of credit from Bank of America taken out against the Harwichport Property owned by the trusts in the names of Anne, Lucien, and Nina but not owned by Lucien individually. The HELOC was dated June 13, 2007 and named "LUCIEN R. COLLART JR., AN UNMARRIED PERSON" as the grantor. It did not mention any of the trusts that held title to the Harwichport Property. The HELOC was recorded in August 2007.

After Nina learned of the HELOC, her counsel sent a letter to Bank of America in September 2007 disputing its validity. The letter said that the trusts, not Lucien individually, held

title to the Harwichport Property and that neither Nina nor the trustee of the Nina Trust consented to the HELOC.

In October 2007, Nina became concerned about her father's capacity and his relationship with Tri. She petitioned the probate court to appoint a guardian for Lucien. Her initial petition was denied, but almost a year later the court appointed John Conathan as Lucien's temporary guardian on July 30, 2008. The guardianship became permanent on September 25, 2008.

In his role as guardian, Conathan negotiated the sale of the Bass River Property for $1.75 million in April 2009.[1] Conathan petitioned the probate court for a license to sell the property, and the court appointed a guardian ad litem who determined that the sale was in Lucien's best interest. The guardian ad litem's report said that the proceeds from the sale should be used to repay Anne's estate, pay off the HELOC, and provide for Lucien's living expenses. The probate court approved the sale. Conathan used the sale proceeds to replenish Anne's estate and provide for Lucien's living expenses. He stopped making payments on the HELOC in July

---

[1] Lucien's purchase of the Bass River Property resulted in litigation. The sellers of the Bass River Property had accepted an offer to sell the property for $2 million. They backed out of this agreement and sold the property to Lucien when he offered them $2.3 million. To settle the various lawsuits stemming from this transaction, Conathan agreed to sell the property to the original offerors for $1.75 million and received $250,000 for Lucien from the sellers.

2010 after he was informed by his counsel that the HELOC was invalid.

Lucien died in August 2013. Nina became the trustee of the Anne and Lucien trusts. Almost two years after Lucien's death, the probate court entered an Order of Final Settlement granting all of Lucien's estate -- about $1 million -- to Nina in June 2015. Bank of America assigned the HELOC to Wilmington through transactions in October 2015 and January 2016. In November 2016, Nina requested that Wilmington discharge the HELOC because Lucien did not hold legal title to the property when it was created. Wilmington was thus on notice of Nina's objections and assertions that the HELOC was not valid. In June 2017, Nina, acting as the trustee of the Lucien and Anne Trusts and together with the trustee of the Nina Trust, conveyed the Harwichport Property to herself.

## II.  Procedural History

Wilmington brought suit against the defendants in November 2017. It sought (1) a declaration that the HELOC was a valid encumbrance on the Harwichport Property, (2) an equitable lien against the Harwichport Property, (3) a constructive trust on the assets of Lucien's estate, and (4) an attachment of the Harwichport Property due to Nina's fraudulent conveyance of the

- 7 -

Harwichport Property to herself.  Both parties moved for summary judgment.

On March 29, 2019, the district court held that the HELOC was invalid because Lucien obtained it in his individual capacity. The Harwichport Property was owned by the Anne, Lucien, and Nina Trusts.  Lucien, individually, did not have title to the property. He did not validly execute the HELOC because he did not act through the Lucien or Anne Trusts.

Next, the district court held that Wilmington was entitled to an equitable lien against the Harwichport Property. It found that after the sale of the Bass River Property, the proceeds from the $500,000 HELOC were returned to Lucien.  Nina inherited these proceeds when Lucien died.  The court held that "[t]o allow Nina to retain these funds would result in an unjust enrichment."

On Wilmington's last two claims, the district court held that a constructive trust "would be inappropriate because the defendants did not obtain the assets of Lucien's estate or the [Harwichport] Property through fraud or mistake" and that "Wilmington ha[d] no basis to allege fraudulent transfer" because the HELOC "was not a valid encumbrance."

The defendants appeal from the district court's grant of an equitable lien on the Harwichport Property.[2]

### III.  Legal Analysis

We review a district court's decision to grant or withhold equitable relief for abuse of discretion, even when, as here, the equitable relief is granted through a motion for summary judgment.  See, e.g., Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 678 (1st Cir. 2011).  This standard is deferential but "not unbridled."  Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 10 (1st Cir. 2013).  The standard is "not a monolith: within it, abstract legal rulings are scrutinized de novo, factual findings are assayed for clear error, and the degree of deference afforded to issues of law application waxes or wanes depending on the particular circumstances."  T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 38 (1st Cir. 2020).  When the district court's decision involved "the application of restitution 'rules,' such as those articulated in [a Restatement] rather than purely equitable judgments as to the fair or just result[,]. . . a less deferential standard of review is arguably appropriate."  Invest Almaz v. Temple-Inland Forest Prod. Corp., 243 F.3d 57, 66 n.13 (1st Cir. 2001).

---

[2]    Wilmington originally cross-appealed to challenge the district court's holding that the HELOC was invalid.  It then voluntarily dismissed its cross-appeal.  The grant of the equitable lien is the only issue on appeal.

In this diversity case, whether an equitable lien is a proper remedy is governed by Massachusetts law. Here, the parties dispute whether Massachusetts law allowed the district court to grant an equitable lien when no owner of the Harwichport Property agreed to encumber the property and the proceeds of the transaction did not benefit the property or its true owners. The defendants argue the district court erred by granting the equitable lien on these facts.

When, as here, there is no on-point precedent from the state's highest court, "a federal court sitting in diversity should . . . endeavor to predict how that court would likely decide the question." Butler v. Balolia, 736 F.3d 609, 613 (1st Cir. 2013). In doing so, we rely on the Restatement (Third) of Restitution and Unjust Enrichment,[3] analogous decisions from the Massachusetts Supreme Judicial Court, Massachusetts's other courts, and precedents in other jurisdictions. See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51–52 (1st Cir. 2008).

---

[3] We "pay particular attention to those sources that the state's highest court has endorsed in the past." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 52 (1st Cir. 2008). The Massachusetts Supreme Judicial Court has often cited the Restatement (Third) of Restitution and Unjust Enrichment. See Suffolk Constr. Co. v. Benchmark Mech. Sys., Inc., 56 N.E.3d 138, 143 (Mass. 2016); Metro. Life Ins. Co. v. Cotter, 984 N.E.2d 835, 849 (Mass. 2013); Bos. Med. Ctr. Corp. v. Sec'y of Exec. Office of Health & Human Servs., 974 N.E.2d 1114, 1132 (Mass. 2012).

An equitable lien is "a charge upon specific property, entitling the holder of the lien to have the property applied in equity to the payment of his debt as against all other claimants of the property except purchasers for value without notice." United States v. Friedman, 143 F.3d 18, 23 (1st Cir. 1998) (quoting Ballentine v. Eaton, 8 N.E.2d 808, 809 (Mass. 1937)).  According to § 56(1) of the Restatement (Third) of Restitution and Unjust Enrichment, on which the parties and the district court relied:

> If a defendant is unjustly enriched by a transaction in which
>
> (a) the claimant's assets or services are applied to enhance or preserve the value of particular property to which the defendant has legal title, or more generally
>
> (b) the connection between unjust enrichment and the defendant's ownership of particular property makes it equitable that the claimant have recourse to that property for the satisfaction of the defendant's liability in restitution,
>
> the claimant may be granted an equitable lien on the property in question.

Restatement (Third) of Restitution and Unjust Enrichment § 56(1) (Am. Law Inst. 2011).

The Restatement makes clear that a transactional nexus must exist between the property and the events giving rise to the equitable lien.  This nexus requirement is usually, but not necessarily, satisfied as described in § 56(1)(a).  See id. at

- 11 -

§ 56 cmt. d ("The transactional nexus between the recipient's unjust enrichment and the property made subject to lien is most often supplied . . . when [a] claimant's assets have been used to enhance or maintain the value of the property in question."). Here, the HELOC proceeds were used to purchase the Bass River Property. Wilmington does not argue that they were used to enhance or maintain the Harwichport Property.

Instead, Wilmington argues that a transactional nexus can exist even when no owner agreed to encumber the Harwichport Property and the HELOC proceeds did not benefit the property or its true owners. It first says that Friedman, 143 F.3d at 23, and Delval v. Gagnon, 99 N.E. 1095, 1096 (Mass. 1912), support the proposition that an equitable lien can arise solely from the express agreement of a debtor to pay a creditor out of a specific fund. It argues that Lucien expressly agreed to repay the HELOC from the Harwichport Property and that this agreement can supply the requisite transactional nexus.

Wilmington's citations to Friedman and Delval are inapposite. Both cases did involve express agreements to pay creditors out of specific funds. See Friedman, 143 F.3d at 20, 23; Delval, 99 N.E. at 1096. But in both cases, it was undisputed that the debtors owned and controlled the assets from which they

agreed to pay the creditors.[4] Here, to the contrary, the district court found that Lucien did not have the authority to pledge the Harwichport Property. As Wilmington has dismissed its cross-appeal, it does not contest this finding by the district court. His express agreement to pay off the HELOC from the Harwichport Property cannot support the equitable lien.

Wilmington next argues that Lucien's possession of the Harwichport Property and his intent to encumber it are sufficient to provide a transactional nexus. It says that Pinch v. Anthony, 90 Mass. 536 (1864), controls this case. Pinch says that "a party

---

[4] In Friedman, the property at issue was held in trust with the defendant's wife as the sole beneficiary. 143 F.3d at 19. The creditor was a supplier to the business jointly owned by the defendant and his wife. Id. at 20. The defendant's wife personally guaranteed the business's debt and specifically pledged the property as collateral. Id. The business defaulted. Id. The defendant's wife asked the creditor not to attach the property because she believed it would "have a chilling effect on [its] impending sale." Id. Instead, she gave the creditor a written guarantee that it would be paid "from the proceeds of the sale of the property." Id. Before the creditor was paid, U.S. Marshals seized the proceeds of the sale and prevented the creditor from being paid. Id. at 19. It was undisputed that the defendant's wife validly pledged the sale proceeds as collateral. We affirmed the district court's order granting an equitable lien on the proceeds to the creditor. Id. at 23-24.

In Delval, the Massachusetts Supreme Judicial Court held that the defendant's lawyer had an equitable lien on the proceeds of a judgment in the defendant's favor. 99 N.E. at 1096. The defendant had pledged the proceeds to her lawyer and had given him "a charge or incumbrance upon this specific fund as security for the sum due him." Id. It was undisputed that she could validly pledge the judgment proceeds.

may by express agreement create a charge or claim in the nature of a lien on real as well as personal estate of which he is the owner or possessor, and that equity will establish and enforce such charge or claim." Id. at 539 (emphasis added). Wilmington argues that because Lucien possessed the Harwichport Property when he executed the HELOC and intended to encumber it, the "or possessor" language from Pinch is dispositive. It says that it is irrelevant that Lucien did not own the property. Wilmington reads Pinch too broadly.

The "or possessor" language in Pinch is nonbinding dicta. The plaintiff in Pinch sought an equitable lien on land the defendant owned and did not merely possess. Id. at 536; see Town of Dartmouth v. Greater New Bedford Reg'l Vocational Tech. High Sch. Dist., 961 N.E.2d 83, 95 (Mass. 2012) (finding language "unnecessary to the holding of the case" to be "merely dicta" and nonbinding). The "or possessor" language was unnecessary to Pinch's holding and does not control this case.

Cases decided around the same time as Pinch also undermine Wilmington's broad reading of it. These cases say that when a mortgagor purports to mortgage a property he does not own, as was the case here, equity cannot grant relief to the mortgagee.[5]

---

[5] There is a line of cases in Massachusetts holding that a lender can secure an equitable lien on a property even when the mortgagor could not convey title to the property (e.g., due to lack of ownership or fraud). In these cases, the mortgage proceeds

- 14 -

For example, in Pennock v. Coe, the United States Supreme Court quoted the maxim "a person cannot grant a thing which he has not" because "[t]he thing itself is an impossibility" before concluding that "whenever a party undertakes, by deed or mortgage, to grant property, real or personal, in praesenti, which does not belong to him or has no existence, the deed or mortgage, as the case may be, is inoperative and void, and this either in a court of law or equity."  64 U.S. 117, 127-28 (1859) (emphasis added).  Similarly, in Moody v. Wright, the Massachusetts Supreme Judicial Court denied an equitable lien to a mortgagee when the mortgagor could not pledge the property.  It held that, because the mortgaged property was "not capable of being conveyed in mortgage[] at the time when the mortgage was made[,] [t]he instrument could not operate to pass the property as a pledge."  54 Mass. 17, 32 (1847).

---

were used to benefit the property or its true owner.  See Bank Of N.Y. v. Morgan, 977 N.E.2d 105 (Mass. App. Ct. 2012) (unpublished table decision) (holding that, when a mortgage is unenforceable due to fraud, the "[lender] maintains an equitable lien on the property only to the extent that the loan proceeds paid off [defendant's] first mortgage"); Keville v. McKeever, 675 N.E.2d 417, 432 & n.26 (Mass. App. Ct. 1997) (adjusting the amount of an equitable lien to reflect the amount of loan proceeds used to benefit the property or its true owner).  The courts in Bank of New York and Keville restricted the amount of the equitable lien to the extent the lien proceeds benefited the property or the property's true owner.  The requisite transactional nexus for an equitable lien was supplied by this improvement or benefit.  It was not supplied by the mortgagor's intent to secure the fraudulent or invalid mortgage with property the mortgagor did not own.

Finally, courts in other jurisdictions have held in more recent cases that an equitable lien is an improper remedy when the mortgagor could not convey title to the property and the mortgage proceeds were not used to improve the property or benefit the true owner. See Wachovia Bank, N.A. v. Coffey, 746 S.E.2d 35, 36-38 (S.C. 2013) (upholding dismissal of bank's claim for an equitable lien when a husband took out a HELOC on a property "titled in [his] [w]ife's name only," the bank never verified if the husband owned the property, and the husband used the proceeds to buy a sailboat); DFA Dairy Fin. Servs., L.P. v. Lawson Special Tr., 781 N.W.2d 664, 672 (S.D. 2010) (affirming a trial court's denial of an equitable lien when the proceeds of a mortgage were not used to preserve or improve the property and the mortgagor did not have authority to convey the property); Sorenson v. Pyeatt, 146 P.3d 1172, 1175, 1178 (Wash. 2006) (en banc) (holding that lenders had "failed to establish . . . that they are entitled to an equitable lien" when the mortgagor "forged the deeds that purported to convey title," "had no power to grant a valid security interest in the property," and "used the fraudulently obtained loan money primarily as disposable income").  Wilmington has cited no case from any jurisdiction where a transactional nexus existed to support an equitable lien when the mortgagor did not have authority to mortgage the property and did not use the mortgage proceeds to benefit the property or its owner.

Because the proceeds from the HELOC were used to purchase the Bass River Property and did not benefit the Harwichport Property's true owners, no transactional nexus exists to support the equitable lien. The lien was thus based on an error of law. The district court found that Nina benefited from the HELOC proceeds because she inherited them through Lucien's estate. But this benefit has nothing to do with her interest in the Harwichport Property. Indeed, as Wilmington acknowledges in its brief to us, "Nina's ownership interest [in the Harwichport Property] [had] no bearing on [the district court's] analysis." The lenders here, Wilmington and its predecessor Bank of America, could and arguably should have taken steps to assure the validity of any HELOC they wished to grant. They did not do so. And they did not even do so in the face of Nina's prompt challenges to the validity of the HELOC. Under such circumstances and given the error of law, the grant of the lien to Wilmington was an abuse of discretion and the defendants should have had judgment entered in their favor.

**IV.**

We reverse and remand with instructions to enter judgment for the defendants.

- 17 -