# United States Court of Appeals
## For the First Circuit

No. 21-1629

DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for IXIS Real
Estate Capital Trust 2006-HE3 Mortgage Pass Through
Certificates, Series 2006-HE3,

Plaintiff, Appellant,

v.

LISA M. WILSON; DUNKIN ENGINEERING SOLUTIONS, LLC,

Defendants, Appellees,

SABRINA PETRARCA; VNA CARE OF NEW ENGLAND; MASON P. WILSON III,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Kayatta, Lynch, and Howard,
Circuit Judges.

Krystle Guillory Tadesse, with whom Jeffrey C. Ankrom and
Locke Lord LLP were on brief, for appellant.
Paul DeMarco, with whom Geremia & DeMarco, Ltd. was on brief,
for appellee Lisa M. Wilson.
Patricia A. Buckley, with whom Bengtson & Jestings, LLP,
Thomas J. Cronin, and Nowlan Brunero Cronin & Ferrara, LTD were on
brief, for appellee Dunkin Engineering Solutions, LLC.

September 17, 2024

**HOWARD**, <u>**Circuit Judge**</u>.   Lisa Wilson has resided at her home in Coventry, Rhode Island since her late husband, Mason P. Wilson III, purchased it in 2006.   A labyrinthine series of sales and adjudications saw title in her home pass from the Wilsons, to certain third parties, and finally to Dunkin Engineering Solutions, LLC ("Dunkin").   Along the way, a court order extinguished a mortgage lien on the property held by Deutsche Bank National Trust Company ("Deutsche Bank").

Alleging that Lisa and Mason breached the covenants in the mortgage agreement, Deutsche Bank sued Lisa, Mason, and Dunkin. The district court granted summary judgment to Lisa and Dunkin. Because we agree that none of Deutsche Bank's claims present a material issue of fact, we affirm.

## I.

## A.

The winding string of transactions underlying this appeal began in June 2006 when Mason financed the purchase of the Wilsons' home with a $150,000 home mortgage.   The original mortgage lender required execution of two documents: a promissory note, obligating repayment of the $150,000 loan, and a mortgage agreement, pledging the Wilsons' home as security.   Only Mason and the lender signed the note, but both Wilsons signed the mortgage agreement.

- 3 -

The mortgage agreement contained covenants purporting to obligate "Borrowers" to (1) "defend generally the title of the Property against all claims and demands" in the best interest of the lender; (2) "pay all taxes, assessments, charges, fines and impositions attributable to the Property[;]" and (3) "discharge any lien which obtains priority" over the lender's mortgage lien. The agreement also provided, however, that any "Borrower" who does not sign the underlying note was a "co-signer" to the agreement. A co-signer, it stated, agreed "only to mortgage, grant, and convey the co-signer's interest in the Property" and "is not personally obligated to pay the sums secured" by the agreement.

In September 2007, Deutsche Bank acquired both the mortgage and the note from the original lender. Meanwhile, one year into the mortgage agreement, Mason was beginning to default on the mortgage payments. He would continue to miss payments for the next seven years, but Deutsche Bank never foreclosed. During that time, the Wilsons also failed to pay property taxes owed to the Hopkins Hill Fire District, and the Fire District eventually scheduled a tax sale of the property for September 2014. Although Deutsche Bank and the Wilsons admit that the Fire District properly notified them of the tax sale, these parties did not appear at or contest the sale.

Instead, Birdsong Associates, an unaffiliated third party, bought the property and commenced foreclosure proceedings

- 4 -

against the Wilsons. And, as at the tax sale, neither Deutsche Bank nor the Wilsons appeared at the proceedings, despite having been properly notified. Birdsong then sought and received in January 2016 a decree from the Rhode Island Superior Court "foreclos[ing] and barr[ing]" "all rights of redemption" held prior to the tax sale and vesting "legal and equitable title to the property" in Birdsong.

With the property now free and clear of Deutsche Bank's mortgage lien, Birdsong conveyed the property to an assignee, Coventry IV-14, RIGP ("Coventry"). In June 2016, Deutsche Bank inquired about purchasing the property from Coventry, but negotiations ceased the following January.[1]

A month later, Coventry initiated eviction proceedings against the Wilsons. The proceedings prompted Mason's father and stepmother to contact Coventry in March 2017 and offer to buy the property. Coventry agreed to sell the property for $75,000 but only to a third party, not Lisa and Mason. For that reason, the parents' attorney formed a limited liability company, Dunkin, which bought the property from Coventry on May 31, 2017. Lisa and

---

[1] Deutsche Bank paid taxes and insurance on the property at issue from October 2014 to July 2016. The bank also paid to Mason insurance proceeds that it had received in connection with a claim filed by Mason for damage to the property incurred in September 2016. Dunkin and Lisa do not dispute these facts.

Mason had no legal interest in Dunkin at its formation; Mason's parents were Dunkin's sole shareholders.

A year later, the elder Wilsons transferred their shares in Dunkin to the newly-created Wilson Family Revocable Trust, which provided that Mason would inherit the shares upon the elder Wilsons' deaths. In July 2018, Mason's father died; then, in May 2019, Mason died. Mason's stepmother subsequently updated the trust to provide that, upon her own death, "[a]ll the [parents'] interest" in Dunkin "[should] be distributed to Lisa Wilson." So, when Mason's stepmother died in November 2019, Lisa became the sole owner and beneficiary of the Wilson Family Revocable Trust and effectively reacquired the property.

## B.

In February 2019, shortly before Mason's death, Deutsche Bank sued Lisa, Mason, and Dunkin in the United States District Court for the District of Rhode Island.[2] In Count One of Deutsche Bank's amended complaint, the bank alleged that the mortgage agreement was enforceable as a contract between the bank and both of the Wilsons. Thus, it claimed, the Wilsons were liable to Deutsche Bank for the damages caused by their breaches of the mortgage covenants. In Counts Three, Four, and Six, Deutsche Bank

---

[2] The original complaint also named two other interested parties as defendants, but Deutsche Bank amended its complaint to drop those parties.

asserted equitable claims against the Wilsons and Dunkin, seeking relief under theories of constructive trust (Count Three), equitable lien (Count Four), and unjust enrichment (Count Six).[3]

After discovery, Deutsche Bank, Lisa, and Dunkin brought cross-motions for summary judgment. The district court denied Deutsche Bank's motion and granted the defendants' motions on all counts. Deutsche Bank Nat'l Tr. Co. ex rel. IXIS Real Est. Cap. Tr. 2006-HE3 Mortg. Pass Through Certificates, Series 2006-HE3 v. Wilson, 552 F. Supp. 3d 230, 235 (D.R.I. 2021).

In ruling for Lisa on the breach-of-contract claim, the district court reasoned that the agreement had been "extinguished" by the Rhode Island Superior Court's 2016 decree. Id. at 234. Thus, Deutsche Bank could not recover under the agreement unless there was a basis to set aside the tax sale. Id. And, under Rhode Island law, setting aside is appropriate only when the parties to the mortgage have not been properly notified of the sale. Id.; 44 R.I. Gen. Laws Ann. § 44-9-24. Because Deutsche Bank and the Wilsons had been properly notified of the foreclosure proceeding,

---

[3] Deutsche Bank also sought a declaratory judgment that the transfer of the property to Dunkin effectuated a redemption of the tax sale deed (Count Two) and brought a contractual claim against Mason alleging that he breached the terms of the promissory note (Count Five). Although its brief appears to challenge the district court's ruling on Count Five, counsel for Deutsche Bank clarified at oral argument that it does not appeal from either count. Only Dunkin and Lisa moved for summary judgment, not Mason. The claims as to Mason have not been pursued by Deutsche Bank.

- 7 -

the district court concluded that Deutsche Bank had no remaining contractual rights against either of the Wilsons. Wilson, 552 F. Supp. 3d at 234.

The district court next rejected the equitable claims for constructive trust and equitable lien, reasoning that Deutsche Bank provided no evidence that the elder Wilsons had "devised a scheme" to give the property to Mason and Lisa. Id. Similarly, with respect to the unjust-enrichment claim, the court found that no benefit had accrued to Dunkin or to Lisa from the payments that Deutsche Bank had made in connection with the property. Id. at 235. Thus, neither defendant could owe Deutsche Bank restitution. Id.

Dissatisfied with this outcome, Deutsche Bank timely appealed.

**II.**

Deutsche Bank challenges the district court's grant of summary judgment in favor of Lisa Wilson on the breach-of-contract claim, in favor of Dunkin on the constructive-trust and equitable-lien claims, and in favor of both on the unjust-enrichment claim.[4] We address each challenge in turn.

_____

[4] Deutsche Bank also appeals from the district court's denial of its own summary-judgment motion on the breach-of-contract claim. Because we conclude that Lisa and Dunkin were entitled to summary judgment on that claim, that conclusion disposes of that argument by Deutsche Bank.

**A.**

We review a district court's order granting summary judgment de novo.  See Pac. Indem. Co. v. Deming, 828 F.3d 19 (1st Cir. 2016).  We affirm a grant of summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We need not adopt the district court's reasoning, "but, rather, may affirm an order of dismissal on any ground made manifest by the record."  Burt v. Bd. of Trs. of Univ. of R.I., 84 F.4th 42, 50 (1st Cir. 2023).

**B.**

We begin with Deutsche Bank's contractual claim.  Deutsche Bank argues that Lisa breached, and continues to breach, certain covenants in the mortgage agreement and that her breaches caused Deutsche Bank to "los[e] its entire security interest in the Property."  We explain why the language of the instruments at issue, which was drafted by Deutsche Bank's predecessor, is at best ambiguous and why, because of those ambiguities, Rhode Island law dictates that summary judgment be entered in Lisa's favor.

Understanding the novel nature of Deutsche Bank's claim requires some familiarity with mortgage financing.  "A mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation."  Restatement (Third) of Property (Mortgages) § 1.1 (Am. L. Ins. 1997).  In most mortgage

- 9 -

transactions, that obligation is the performance of a promissory note. See id. cmt. a. The lender loans to a prospective homebuyer a sum of money to purchase some property, and the homebuyer promises to repay that sum under the terms of the note, mortgaging the property as security. Id. This arrangement confers to the lender two distinct rights. The note gives the lender a contractual right to repayment, and the mortgage gives the lender a right to foreclose should the buyer default on the obligations imposed by the note. See LaPorte v. Ramac Assocs., Inc., 395 A.2d 719, 720 (R.I. 1978). Although mortgage agreements often contain covenants of their own, a mortgage is generally only enforceable insofar as the underlying note is enforceable. See Restatement (Third) of Property (Mortgages) § 1.2 cmt. a (recognizing that a mortgage is "generally enforceable only to the extent that the underlying obligation is enforceable" except that a lender may still enforce a mortgage "if no one has personal liability for the obligation" or if the mortgage "secure[s] promised gifts").

The lender's dual rights provide it with at least two methods of enforcing a buyer's obligations. The lender can sue the homebuyer under the promissory note, "and, to the extent that the judgment is not satisfied, foreclose the mortgage on the real estate for the balance." Id. § 8.2. Or the lender can exercise its right to foreclose on the property, "and to the extent that the proceeds of the foreclosure sale do not satisfy the obligation,

obtain a judgment for the deficiency against any person who is personally liable on the obligation."  Id.; see also LaPorte, 395 A.2d at 720 ("[I]n Rhode Island foreclosure on a mortgage does not bar a subsequent suit on the secured note for any deficiency.").

Here, Deutsche Bank cannot enforce the promissory note against Lisa because she signed only the mortgage agreement.  Nor can it initiate foreclosure proceedings because the Superior Court's 2016 decree extinguished all liens on the property.  With these traditional remedies unavailable, Deutsche Bank resorts to a more inventive contractual theory: that certain covenants in the mortgage agreement create separate contractual obligations binding Lisa to the mortgage covenants.  Deutsche Bank contends that it can require Lisa to specifically perform those covenants, and thereby "cause her company, Dunkin, to make its interest in the Property subject to the Mortgage," or recover from Lisa the damages that Deutsche Bank suffered from her breach of those covenants -- the "[a]mounts due under the Note/Mortgage" plus additional costs. We focus on these arguments.[5]

---

[5] The district court did not address these questions, concluding that "there was undoubtably an agreement between the parties here."  We are not so sure.  While Lisa admits to signing the mortgage agreement, she denied being subject to the agreement covenants and to the note in the district court.  Lisa's appellate brief further contended that "Lisa did not have any obligation under the note . . . ."  So, not only did she not concede application to her of the obligations; she expressly argued that they did not apply.

- 11 -

"[T]he intention of the parties" governs the interpretation of a written contract, so long as "that intention can be clearly inferred from its terms." Woonsocket Teachers' Guild, Local 951 v. Sch. Comm. of Woonsocket, 367 A.2d 203, 205 (R.I. 1976). When inquiring into the parties' intent, Rhode Island courts consider "the agreement . . . in its entirety" and give the agreement's words "their ordinary meaning." Petrolex II LLC v. Bailey Grp. LLC, 290 A.3d 1288, 1293 (R.I. 2023) (quoting Sturbridge Home Builders, Inc. v. Downing Seaport, Inc., 890 A.2d 58, 62-63 (R.I. 2005)). When the terms are ambiguous -- that is, when "the document's language is susceptible to more than one reasonable interpretation" -- then "the language will be strictly construed with all ambiguities decided against the drafter." Monahan v. Girouard, 911 A.2d 666, 672 (R.I. 2006).

Deutsche Bank accuses Lisa of breaching three mortgage agreement covenants: (1) "to defend generally the title to the

---

Because Lisa's dispute of this allegation by Deutsche Bank amounts to an assertion of law, not merely a statement of fact, its argument at the pleadings stage sufficiently lodges it in the record irrespective of whether she reiterated it later on. See Doe v. Trustees of Bos. Coll., 892 F.3d 67, 88 (1st Cir. 2018) ("[W]here 'the evidentiary foundation for determining the formation of the parties' contract . . . consist[s] of writings,' contract formation is instead a question of law for the court." (first and third alterations in original) (quoting TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 (1st Cir. 2007))). Accordingly, exercising our discretion to affirm based on any ground apparent in the record, we evaluate whether Deutsche Bank can establish that the covenants it relies on bind Lisa. See Burt, 84 F.4th at 50.

property[;]" (2) to "pay all taxes" on the property; and (3) to "discharge any lien which obtains priority" over Deutsche Bank's mortgage lien. The agreement imposes these duties on "Borrower[,]" defined earlier in the document as Mason and Lisa.

We review the document in its entirety, and the agreement later outlines the unique duties of "any Borrower who co-signs this Security Instrument but does not execute the note."[6] Unlike a Borrower who executed the note, a co-signer agrees "only to mortgage, grant, and convey the co-signer's interest in the Property under the terms of this Security Instrument." Further, a co-signer "is not personally obligated to pay the sums secured by" the mortgage, and the lender can agree with "any other Borrower" to modify the terms of the mortgage agreement "without the co-signer's consent." Other language also reinforces these limitations on a co-signer's duties as a borrower. For instance, one covenant states that "Borrower shall pay when due the principal of, and interest on, the debt evidenced by the note." But Lisa, as a co-signer, "is not personally obligated to pay" the debt evidenced by the note, and thus the parties could not have intended that she be subject to that covenant.

The ordinary meaning of its terms suggests that the co-signer language also exempts Lisa from the covenants which Deutsche

---

[6] The mortgage agreement refers to itself as the "Security Instrument."

- 13 -

Bank now attempts to enforce. Lisa's promise "<u>only</u> to mortgage, grant and convey" <u>her</u> interest in the property "under the terms of the Security Instrument" seemingly limits her contractual commitment to conferring a mortgage lien.[7]

Although "the terms of this Security Instrument" cannot refer to all of the Borrower's covenants, it could refer to the covenants which Deutsche Bank now attempts to enforce. The co-signer language does not expressly prohibit the lender from binding a co-signer to additional covenants like it prohibits the lender from holding a co-signer liable for the balance of the note.

Deutsche Bank, however, does not attempt to explain why that interpretation is reasonable, and it does not explain why a reasonable co-signer would have understood the relevant language as Deutsche Bank proffers.[8] Nor is such a conclusion evident from

---

[7] The other covenants would then apply only to Mason, the party to the underlying obligation secured by the mortgage. By co-signing, Lisa simply agreed that, if Mason breached his covenants, the lender could foreclose on her interest in the property. Indeed, that Mason and the lender could bilaterally modify the covenants, without notifying Lisa or securing her consent, indicates that the parties did not intend to bind Lisa to those obligations.

[8] Below, Deutsche Bank did make such an argument, warning that if the covenants did not apply to co-signers, Lisa "could cause the destruction of the Property, receive insurance proceeds for the damage, leave a Lender with an environmental disaster, and be immune from any monetary recovery." In that situation, however, Mason would still be obligated to maintain his own property insurance, notify the insurer and the lender in the event of a loss, and apply "any insurance proceeds . . . to restoration and repair of the property." And, "if the restoration or repair is not economically feasible or Lender's security interest would be

- 14 -

context in the record. Of course, the lender must have demanded some assurances to protect its security interest in the property. But even if Lisa were not subject to the three covenants at issue, the lender would still have recourse against Mason whenever property taxes went unpaid, whenever a superior lien was not discharged, and whenever the title was not otherwise defended. And Deutsche Bank presents nothing beyond the ambiguous language quoted earlier to suggest that Lisa intended to accept such responsibility. The agreement expressly states that, with respect to the note balance, Lisa did not guarantee Mason's debt.

The lender could have drafted the mortgage agreement to make clear that the co-signer was contractually obligated to perform all covenants in the agreement except for those related to repaying the balance on the note, but the lender chose not to. Hence, the mortgage agreement does not unambiguously show that the parties intended for the relevant covenants to apply to Lisa, and Deutsche Bank runs headlong into Rhode Island's well-established practice of construing ambiguous contractual provisions against the drafter, here the original lender. See Monahan, 911 A.2d at 672.

---

lessened," then the agreement states that Mason shall apply the proceeds to "the sums secured by" the mortgage -- the note balance. Thus, to the extent that Lisa could "leave [Deutsche Bank] with an environmental disaster," Mason would compensate Deutsche Bank for its losses.

- 15 -

Our conclusion is reinforced by Deutsche Bank's inability to provide any reported decision in which mortgage agreement covenants were found to impose independent contractual obligations on a co-signer. To that end, Deutsche Bank's reliance on Dovenmeuhle Mortgage, Inc. v. Antontelli, 790 A.2d 1113 (R.I. 2002), is misplaced. In Dovenmeuhle, a lender assigned to a third party a promissory note and related mortgage agreement after the mortgaged property was sold at a tax sale. Id. at 1114. The assignee sued the original buyer "to recover the balance due on the promissory note[,]" and the Rhode Island Superior Court granted summary judgment to the assignee. Id. On appeal, the Rhode Island Supreme Court affirmed, rejecting the buyer's argument that the lender had an implied obligation to mitigate its damages by paying taxes on the property. Id. at 1114-15. Because the mortgage agreement "specifically provide[d] that although [the lender] may protect its rights in the property by clearing up any lien, it has no obligation to do so[,]" the court declined to impliedly impose such a duty on the lender. Id. at 1115.

Dovenmeuhle is distinguishable from the instant case because the assignee there sued to recover the balance due on the note, not to recover damages for breached covenants in the mortgage agreement. The Rhode Island Supreme Court merely reiterated a basic principle of contract law that a written contract is governed

- 16 -

by the plain meaning of its terms.  Its holding does not affect our interpretation of the mortgage agreement here.

C.

We now turn to the constructive-trust and equitable-lien claims against Dunkin and the unjust-enrichment claim against Lisa and Dunkin.  We address the former two claims together before reaching the unjust-enrichment claim.

"We review a district court's decision to grant or withhold equitable relief for abuse of discretion, even when, as here, the equitable relief is [withheld] through a motion for summary judgment."  Wilmington Sav. Fund Soc'y, FSB v. Collart, 980 F.3d 210, 214 (1st Cir. 2020).  "This standard is deferential but 'not unbridled.'"  Id. (quoting Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 10 (1st Cir. 2013)).  "[W]ithin [this standard], abstract legal rulings are scrutinized de novo, factual findings are assayed for clear error, and the degree of deference afforded to issues of law application waxes or wanes depending on the particular circumstances."  Id. (quoting T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 38 (1st Cir. 2020)).  Like the contractual claim, Deutsche Bank's equitable claims are governed by Rhode Island law.  Id.

i.

Constructive trusts and equitable liens are "remedies by which a claimant may obtain restitution from property."

Restatement of Restitution (Third) § 56 cmt. a (Am. L. Inst. 2011).[9] Rhode Island courts will award these remedies "in situations in which legal title to property was obtained by fraud or in violation of a fiduciary or confidential relationship." Dellagrotta v. Dellagrotta, 873 A.2d 101, 111 (R.I. 2005) (quoting Renaud v. Ewart, 712 A.2d 884, 885 (R.I. 1998)). "[T]he party seeking" an equitable lien or "a constructive trust must prove by clear and convincing evidence . . . [(1)] the existence of a fiduciary or confidential relationship between the parties and [(2)] either a breach of a fiduciary duty or fraud resulting from the parties['] confidential association." Id. (emphasis in original)

Deutsche Bank cannot satisfy the first element because it has not provided evidence of a fiduciary or confidential relationship between itself and Dunkin. Deutsche Bank's sole argument on this point is that the "covenants in the Mortgage . . . imposed a type of fiduciary duty on" Lisa and that Dunkin is responsible for her breach of those duties.

Preliminarily, we doubt that Lisa and Deutsche Bank were in a fiduciary relationship and that we can impute any such

---

[9] Deutsche Bank's constructive-trust claim seeks to impose an obligation on Dunkin to convey the property to Deutsche Bank, and the equitable-lien claim seeks to re-impose the mortgage lien on the property. See Darr v. Muratore, 143 B.R. 973, 976 (D.R.I. 1992) (providing that a constructive trust "imposes [a personal] obligation on one party to convey real estate to the other party," whereas an "equitable lien . . . is a proceeding against the property itself to enforce an equitable interest in the property").

relationship to Dunkin. We do not see, nor has Deutsche Bank attempted to explain, how a standard mortgage arrangement requires a degree of confidence and trust beyond that inherent in a typical contractual relationship. See EDC Inv., LLC v. UTGR, Inc., 275 A.3d 537, 544 (R.I. 2022). And we find it highly unlikely that a Rhode Island court would disregard Dunkin's corporate structure, even if Lisa did have any fiduciary obligation, to impose those obligations on Dunkin. See R&B Elec. Co. v. Amco Const. Co., 471 A.2d 1351, 1354 (R.I. 1984) ("It is well settled that the corporate entity should be disregarded . . . only when the facts of a particular case render it unjust and inequitable to consider the subject corporation a separate entity.").

We need not decide either issue, however, because Deutsche Bank's argument fails for a more obvious reason: As we explained above, Deutsche Bank's claims as to the mortgage agreement covenants fail. The covenants could not have created a fiduciary relationship between Deutsche Bank and Lisa,[10] and thus no reasonable jury could find that Dunkin breached confidential or fiduciary duties to Deutsche Bank.

---

[10] Of course, Mason may have been a fiduciary of Deutsche Bank, but Deutsche Bank does not make that argument on appeal, and we thus consider it waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Further, we would hesitate to require the district court to grant Deutsche Bank an equitable remedy here, because Deutsche Bank explicitly slept on its rights at least twice. See Sloat v. City of Newport ex rel. Sitrin, 19 A.3d 1217, 1222 (R.I. 2011) ("[T]he granting of equitable relief is extraordinary relief and will not be applied unless the equities clearly must be balanced in favor of the party seeking that relief . . . ." (quoting Ocean Rd. Partners v. State, 612 A.2d 1107, 1111 (R.I. 1992))); DiLuglio v. Providence Auto Body, Inc., 755 A.2d 757, 774 (R.I. 2000) ("[W]hen parties sit idly on their known rights, equity will follow their example."). Deutsche Bank failed to make an appearance and assert its interests at the tax sale of the property in September 2014, despite having received proper notice of the proceedings. And it again failed to appear at the 2016 foreclosure proceedings that resulted in the Rhode Island Superior Court decree. Deutsche Bank is a sophisticated commercial entity that is well aware of its rights and obligations under the mortgage agreement, and yet it "s[at] idly on [its] known rights," DiLuglio, 755 A.2d at 774, missing multiple opportunities to defend them. Accordingly, we will not now reward it by requiring an equitable remedy.[11]

_____

[11] Because Deutsche Bank cannot prevail on the merits of these two equitable claims, we need not decide whether Rhode Island's tax title foreclosure statute, R.I. Gen. Laws §§ 44-9-31, otherwise precludes them.

- 20 -

Deutsche Bank's unjust-enrichment claim against Lisa and Dunkin is narrower in scope than the other two equitable claims. It seeks to recover only the sums it paid after the tax sale and foreclosure for taxes and insurance payments on the property. Nonetheless, Deutsche Bank fares no better on this count.

"Recovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them." Narragansett Elec. Co. v. Carbone, 898 A.2d 87, 99 (R.I. 2006). Accordingly, a plaintiff must prove as a threshold matter "that he or she conferred a benefit upon the party from whom relief is sought." Dellagrotta, 873 A.2d at 114.

Deutsche Bank has not provided any evidence that Dunkin or Lisa were unjustly enriched by the sums that it now seeks to recover from them. Deutsche Bank paid property taxes and insurance premiums on the property during a period from October 2014 to July 2016. But, as Deutsche Bank's counsel conceded at oral argument, Birdsong and Coventry owned the property throughout that entire period. Dunkin did not acquire the property until 2017, and Lisa did not inherit the shares of Dunkin until 2021. Deutsche Bank's payments during that period could have benefitted only Birdsong or Coventry, not Dunkin or Lisa.

Deutsche Bank rejects this straightforward reading of the record, claiming that "if [Deutsche Bank] had not paid the intervening taxes, Dunkin would still owe those outstanding taxes when it became the owner of the Property." In doing so, it overlooks that Dunkin would only owe the outstanding taxes if both Birdsong and Coventry failed to pay them. And even viewing the evidence in the light most favorable to Deutsche Bank, there is no indication that Birdsong or Coventry would have so failed.

Deutsche Bank does claim to have made one payment directly to Lisa. It points to funds that Deutsche Bank received in response to a claim that the Wilsons made under their property insurance policy, which the bank claims to have disbursed to Lisa in September 2016. The record, however, indicates otherwise. An invoice reveals that Deutsche Bank in fact disbursed the funds to Mason alone. Deutsche Bank presents no evidence to the contrary, and we cannot divine from the record how sums given to Mason and related to an insurance payout on property owned by a third party could have benefitted Lisa, who did not have any legal interest in the property at the time, or Dunkin, which was not formed until the following May.

We thus conclude that the district court properly granted summary judgment to Dunkin and Lisa.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is **<u>affirmed</u>**.